## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANNEMARIE PULEO, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-936 (JCH) |
| v. | : | |
| | : | |
| WESTERN CONNECTICUT STATE | : | JUNE 16, 2015 |
| UNIVERSITY, | : | |
| Defendant. | : | |

### RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 44)

**I.    INTRODUCTION**

Plaintiff Annemarie Puleo brings this employment discrimination action under Title VII of the Civil Rights Act of 1964 against defendant Western Connecticut State University ("WCSU").  Puleo makes five claims under Title VII:  (1) hostile work environment; (2) sexual harassment; (3) discrimination; (4) retaliation; and (5) disparate treatment.  WCSU filed a Motion for Summary Judgment (Doc. No. 44) as to all of Puleo's claims.  WCSU also submitted a Motion to Strike Plaintiff's Disputed Issues of Fact and to Deem Certain Facts Admitted (Doc. No. 60).

For the reasons that follow, the court grants WCSU's Motion for Summary Judgment, and it terminates the Motion to Strike.

**II.    FACTS**

The following facts are taken from the parties' Local Rule 56(a) Statements and the submitted evidence.  See Def.'s Local Rule 56(a)1 Statement (Doc. No. 44-1); Pl.'s Local Rule 56(a)2 Statement (Doc. No. 54-2).  The court views any factual disputes in the light most favorable to the plaintiff.  The court notes that Puleo's Local Rule 56(a)2 Statement contains a number of denials with citations to the record, which record does

1

not support the denying of WCSU's underlying Local Rule 56(a)1 Statement.  To the extent the court finds no other evidence to support Puleo's denials, these statements are deemed admitted.  See Johnson v. Connecticut Dep't of Admin. Servs., 972 F. Supp. 2d 223, 229 (D. Conn. 2013) ("Where the Plaintiff has objected to Defendant's facts but has failed to support her objection with any admissible evidence in the record, where the record itself does not support Plaintiff's denials, or where the Plaintiff has neither admitted nor denied a fact and where the record supports such fact, those facts are deemed to be admitted."), aff'd, 588 F. App'x 71 (2d Cir. 2015).[1]

Puleo worked for WCSU's Undergraduate Admissions Department.  Plaintiff's complaints primarily arise out of her employment relationship with Stephen Goetsch, to whom she began reporting in the fall of 2011.  See Pl.'s Local Rule 56(a)2 Statement ¶ 1.[2]  Almost as soon as Puleo started reporting to Goetsch, she felt that he treated her unfairly.  See id. ¶ 1.  Puleo's difficulties with Goetsch began because Goetsch wanted her to recruit students from New York state.  See id. ¶¶ 2–3.  This posed a problem for Puleo:  she wanted to stay in WCSU's Waterbury office, but recruiting New York

---

[1] This essentially satisfies the concerns expressed in WCSU's Motion to Strike.  As other cases in this District have noted, "notwithstanding litigants' frequent use of motions to strike portions of the opponent's Local Rule 56(a) Statement, and evidence in support, Local Rule 56 neither authorizes such motions nor contemplates them as an appropriate remedy for a violation of the rule.  Rather, a party should state its objections to the admissibility of evidence presented at summary judgment in its briefing and the Court will rely only upon admissible evidence in ruling on a motion for summary judgment." Schofield v. Magrey, No. 3:12CV544 (JBA), 2015 WL 521418, at *15 (D. Conn. Feb. 9, 2015) (internal alterations and quotation marks omitted); see also Tzanetis v. Weinstein & Riley, P.S., No. 3:09CV00413 (DJS), 2010 WL 3925250, at *1 (D. Conn. Sept. 28, 2010) (collecting cases to support the proposition that "the Court has consistently disapproved of the use of motions to strike during the summary judgment process").  Because the court considers only admissible evidence and ultimately grants WCSU's Motion for Summary Judgment, it terminates WCSU's Motion to Strike as moot.

[2] The court cites to Puleo's Local Rule 56(a)2 Statement for her response to the underlying Local Rule 56(a)1 Statement as well the underlying statement itself.  As discussed, to the extent Puleo denies a statement of fact but provides no support for the denial, the court deems that statement of fact admitted.

students required her to relocate to the Danbury office.  See id.  Puleo requested

mileage reimbursement for driving from WCSU's Waterbury office to its Danbury office.

See ¶ 4.  Goetsch told her that, according to WCSU's Accounting Department, she

could not obtain the mileage reimbursement.  Id. ¶ 5.

The issues between Puleo and Goetsch continued.  Goetsch informed Puleo that

she was not meeting his expectations, specifically regarding the number of file reviews

that she was completing.  See id. ¶ 12.  Gotesch would point in Puleo's face and tell her

she was not meeting his expectations.  Id. ¶ 15.

In November 2011, Goetsch called Puleo into his office and told her that her

clothing was too tight and too short.  Id. ¶ 16.  He explained to her that he had received

a number of complaints about her clothing over a period of four to five months.  Id. ¶ 17.

At one point, Goetsch told Puleo that she was not being a team player at a

meeting because she had declined to translate for Spanish-speaking families without

receiving additional compensation.  Id. ¶ 19.  On another occasion, Goetsch contacted

Puleo after receiving an e-mail from a student worker who felt she had been treated

rudely by Puleo.  See id. ¶ 20.

On a few occasions, Goetsch did not approve travel lodging for her but he did for

other employees traveling similar distances.  Id. ¶ 23.  One of these other employees for

whom Goetsch approved lodging expenses was female.  Id. ¶ 24.

In an e-mail to Puleo and other employees, Goetsch instructs that the recipients

should feel free to wear jeans on a certain day as long as they are not too tight and

without holes.  See id. ¶ 46.   Three male employees were among the eight recipients.

See id. ¶ 45.

Eventually, Goetsch, Puleo, and a few of their coworkers attended a work conference in Philadelphia.  In preparation for this conference, Goetsch sent an e-mail to the other workers stating, among other things, that they should dress professionally.  See id. ¶ 48.  A female employee responded to the e-mail suggesting that they wear suits.  See id. ¶ 49.  At one point during the conference, Goetsch pulled Puleo aside and complained that she was not wearing a suit.  See id. ¶ 51.

When the WCSU employees checked into the Philadelphia hotel, Puleo requested that she have a feather-free room, and she was put on a different floor from the rest of the employees.  Goetsch moved his room to one near Puleo's, stating that his first room was near a noisy pool pump.  See id. ¶ 55.  Puleo then moved her room, and Goetsch never asked for her new room number.  Id. ¶ 56.

During the days of the conference, Goetsch would text the attending WCSU employees about meeting for coffee in the morning.  Id. ¶ 61.

On the last night of the conference, Puleo e-mailed her union and spoke to a WCSU Human Resources employee to complain about Goetsch's behavior during the conference.  Id. ¶ 68.  The Human Resources employee allowed Puleo and the other conference attendees to drive home in a separate car from Goetsch.  Id. ¶ 69.  The day after she got back, she filed a complaint with WCSU's Human Resources Department.  Id. ¶ 71.

Puleo admits that Goetsch never touched her, suggested a physical relationship with her, or flirted with her at the conference.  See id. ¶¶ 57–60.

In June 2012, Goetsch rated Puleo's work as satisfactory for November 1, 2011, through April 30, 2012.  See id. ¶ 101.  Puleo requested that the evaluation be removed

4

from her personnel file, and WCSU agreed to do so.  Id. ¶ 102.  Puleo ultimately

withdrew her request and decided to keep the evaluation in her file.  See id. ¶ 103.  All

members of Puelo's union at WCSU had no salary increase for the 2011 to 2012 and

2012 to 2013 years.  See id. ¶ 100.

Puleo voluntarily reduced her scheduled hours in August 2012 so that she could

pursue a graduate degree, which reduced her salary and benefits.  See id. ¶¶ 80, 97.

Puleo was allowed to return to full time employment in June 2013 in WCSU's Academic

Advisement Office.  Id. ¶¶ 81–82.  Puleo's evaluation covering 2012 through 2013 was

excellent, and she received a 6.97% increase in her salary in August 2013.  See id. ¶

106.

## III.   STANDARD

On a motion for summary judgment, the burden is on the moving party to

establish that there are no genuine issues of material fact in dispute and that it is

entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  Once

the moving party has met its burden, in order to defeat the motion, the nonmoving party

must "set forth specific facts showing that there is a genuine issue for trial," Anderson,

477 U.S. at 255, and present such evidence as would allow a jury to find in his favor.

Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record to address questions of fact, the trial court must resolve

all ambiguities and draw all inferences in favor of the party against whom summary

judgment is sought.  Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  Summary

judgment "is properly granted only when no rational finder of fact could find in favor of

the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir.

2000). "When reasonable persons, applying the proper legal standards, could differ in

their responses to the question" raised, on the basis of the evidence presented, the

question must be left to the finder of fact. Sologub v. City of New York, 202 F.3d 175,

178 (2d Cir. 2000).

## IV.   DISCUSSION

Puleo pursues a number of theories under Title VII: (1) discrimination; (2)

disparate treatment; (3) retaliation; (4) hostile work environment; and (5) sexual

harassment.  The court addresses these theories in turn.

### A.   Discrimination and Disparate Treatment

Title VII discrimination and disparate treatment claims must survive the three-part

burden-shifting test established in McDonnel Douglas Corp. v. Green, 411 U.S. 792

(1973).  See id. at 802–05; McPherson v. New York City Dep't of Educ., 457 F.3d 211,

215 (2d Cir. 2006).  Under this test:

> [The] plaintiff first bears the minimal burden of setting out a *prima
> facie* discrimination case, and is then aided by a presumption of
> discrimination unless the defendant proffers a legitimate,
> nondiscriminatory reason for the adverse employment action, in which
> event, the presumption evaporates and the plaintiff must prove that the
> employer's proffered reason was a pretext for discrimination.

McPherson, 457 F.3d at 215 (internal quotation marks omitted).

#### 1.   Puleo's Prima Facie Case

To establish a prima facie case of unlawful discrimination under Title VII, Puleo

must show "1) that [she] belonged to a protected class; 2) that [she] was qualified for

the position she held; 3) that [she] suffered an adverse employment action; and 4) that

the adverse employment action occurred under circumstances giving rise to an

6

inference of discriminatory intent."  Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).  "A plaintiff's burden to establish a prima facie case of discrimination is not onerous.  Direct evidence is not necessary."  Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995) (internal citations and quotation marks omitted).  The parties do not appear to dispute that Puleo satisfies the first two elements of the prima facie case.

i.    Adverse Employment Action

WCSU argues that Puleo never suffered an adverse employment action.  An adverse employment action is one that involves a materially adverse change in the terms or conditions of employment.  See Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  Examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities."  Id.  Mere disruptions or alterations of job responsibilities are not materially adverse changes in one's conditions of employment.  Id.

In addressing this element of her discrimination claim in her brief, Puleo simply states that the defendant's arguments "are without merit."  Pl.'s Mem. Opp. (Doc. No. 54-1) at 25.  She neither explains what the adverse employment action was nor cites evidence to support her view.  See id.  In other parts of her brief, however, Puleo complains about two incidents being adverse employment actions:  Goetsch's evaluation of Puleo's performance as satisfactory and WCSU's decision to place Puleo as an Assistant Director of Advising after she chose to return to a full time schedule.  See id. at 8, 30; Pl.'s Local Rule 56(a)2 Statement ¶¶ 82, 101.

Regarding the first of these, "District Courts in this Circuit have held that positive evaluations, which are 'not as positive' as previous performance evaluations do not constitute adverse employment actions.  Even negative evaluations, without accompanying adverse consequence such a demotion, diminution of wages, or other tangible loss, are not adverse employment actions."  Lanier v. I.B.M. Corp., 319 F. Supp. 2d 374, 384–85 (S.D.N.Y. 2004) (internal citations omitted) (citing numerous cases).

Goetsch rated Puleo as generally "satisfactory" from November 1, 2011, to April 30, 2012.  See Pl.'s Local Rule 56(a)2 Statement ¶ 101.  However, at no time before or after receving this evaluation was Puleo ever terminated, disciplined, demoted, or placed on administrative leave.  Id. ¶ 96.  To the contrary, WCSU offered to remove the performance review from her employment file, and it accommodated her request for a flexible part-time schedule while she obtained her graduate degree.  See id. ¶ 80. Puleo's next rating was excellent.  See id. ¶ 108.

 In her deposition, Puleo states that she believes Goetsch's rating "contributed to her not being eligible for an increase."  Puleo Mem. Opp., Ex. 1 (Doc. No. 54-3) ("Puleo Dep. I") at 25–26.  However, salaries were frozen for all members of Puleo's union during 2011 and 2012, and in August 2013, Puleo received a 6.97 percent raise.  See Cratty Aff. ¶¶  10, 12, 15.  Puleo has offered no evidence to question these facts, and she has therefore offered no evidence upon which a reasonable jury could conclude that her satisfactory performance evaluation was an adverse employment action.

Puleo's second alleged adverse employment action is that she was not allowed to apply to higher-level position within the Admissions Department (or to otherwise

8

return to the Admissions Department) after she sought to return to work fulltime. However, as Puleo explains, the position she is referring to did not exist: it was discontinued after the employee who formerly occupied it retired and the duties were split between two other employees.  <u>See</u> Puleo Dep. I, at 207–08.  Moreover, Puleo was assigned to Academic Advisement upon her return from being allowed to work part-time.  <u>See id.</u> at 7.  No reasonable jury could view WCSU's choice to allow Puleo to move from part-time to full-time – albeit not in the department of Puleo's choosing – to be an adverse employment action.

      B.     <u>Retaliation</u>

Puleo alleges that WCSU retaliated against her for complaining about Goetsch's treatment of her.  Her retaliation claim is based on the same events as her discrimination claim.  Retaliation claims are also analyzed under the burden-shifting framework.  <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002).  To establish a <u>prima facie</u> case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) the employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the protected activity and the adverse employment action.  <u>See id.</u>

In the context of retaliation claims under Title VII, an adverse employment action is one that "a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from [engaging in a protected activity]."  <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006).  While a negative performance review may be considered part of an adverse action if it leads to a demotion or termination, such an evaluation alone is not a

materially adverse action.  See, e.g., Palmer-Williams v. Yale New Haven Hosp., No. 3:08CV1526 JBA, 2011 WL 1226022, at *10 (D. Conn. Mar. 27, 2011) aff'd, 477 F. App'x 855 (2d Cir. 2012); Byra-Grzegorczyk v. Bristol-Myers Squibb Co., 572 F. Supp. 2d 233, 252 (D. Conn. 2008); Dixon v. City of New York, No. 03-CV-343 (DLI) VVP, 2008 WL 4453201, at *16 (E.D.N.Y. Sept. 30, 2008), granting reconsideration on a separate issue, 2009 WL 1117478 (E.D.N.Y. Apr. 24, 2009).

Based on the undisputed facts, no reasonable jury could conclude that Puelo suffered a materially adverse employment action.  No reasonable jury could find that Goetsch's "satisfactory" rating of Puleo from November 2011 to April 2012 was a materially adverse action.  See Part IV.A.1.i, supra.  Nor could a reasonable jury conclude that Puleo suffered an adverse employment action when WCSU assigned her to the Academic Advisement after accommodating Puleo's request to work part-time. See Part IV.A.1.i, supra.  Thus, summary judgment enters for WCSU.

C.    Sexual Harassment and Hostile Work Environment

A Title VII claim of harassment or hostile work environment requires the plaintiff to show (1) that the harassment that was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment," Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993), and (2) that a "specific basis exists for imputing the conduct that created the hostile environment to the employer."  Murray v. New York Univ. Coll. of Dentistry, 57 F.3d 243, 249 (2d Cir. 1995).  The court discusses the second element first.

1.    Basis for Employer Liability

The nature of an employer's liability under Title VII for an employee's conduct depends on whether the harassing employee was a supervisor or a coworker of the victim.  See Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013).  In Vance, the Supreme Court explained the analytical framework for determining an employer's liability for its employee's harassing conduct.  Under this framework, an employer is strictly liable for a supervisor's harassment of a supervised employee if that harassment results in a tangible employment action against the victim.  See id.  If the supervisor's harassment does not result in a tangible employment action, the employer escapes liability if it can establish, "as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided."  Id.  On the other hand, if the harasser is not a supervisor, but simply a coworker, the employer is liable only if it was negligent in controlling working conditions.  Id.

Thus, this analysis requires a threshold determination of whether the harasser is a supervisor or a coworker.  See id.  An employee is a supervisor if "he or she is empowered by the employer to take tangible employment actions against the victim."  Id.  A tangible employment action is one that effects a significant change in employment status.  See id. at 2443.  Examples include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

A reasonable juror could find that Goetsch was Puleo's supervisor:  it is undisputed that Goetsch's performance evaluation of Puleo could, in certain years, affect Puleo's pay by, for example, making her ineligible for a salary increase.  See Def.'s Local Rule 56(a)1 Statement; Cratty Aff. ¶¶ 9, 13.  Goetsch was the Director of the department in which Puleo worked.  See Cratty Aff. ¶¶ 16–17.  Even though Goetsch could not simply fire Puleo on his own, he could make such a recommendation to his supervisor and the Human Resources Department, and they would then make such a decision.  Id. ¶ 17.  A reasonable jury could find that Goetsch's ability to make such recommendations or to affect Puleo's pay allowed him to take tangible employment actions against Puleo.  For that reason, a reasonably jury could find that Goetsch was Puleo's supervisor.

     i. <u>Faragher</u>/<u>Ellerth</u> Affirmative Defense

An employer may be able to assert the <u>Faragher</u>/<u>Ellerth</u> affirmative defense if "either (1) the employee's supervisor took no tangible employment action, which involves an official company act, against the employee; or (2) any tangible employment action taken against the employee was not part of the supervisor's discriminatory harassment."  <u>Ferraro v. Kellwood Co</u>, 440 F.3d 96, 101 (2d Cir. 2006).  If either of these are true, then the employer can escape liability under the <u>Faragher</u>/<u>Ellerth</u> affirmative defense if it can show that (1) the employer acted reasonably in attempting to prevent and promptly correct harassing behavior and (2) the plaintiff unreasonably failed to take advantage of the employer's preventative or corrective measure or to otherwise avoid harm.  <u>See</u> <u>id.</u>

While a reasonable jury could find that Goetsch was empowered to take tangible employment actions against Puleo, no reasonable jury could find that Goetsch, in fact, took a such an employment action against Puleo.  <u>See</u> Part IV.A.1.i, <u>supra</u>.  Therefore, if WCSU is able to establish the elements of the <u>Faragher</u>/<u>Ellerth</u> affirmative defense, it is not liable for Goetsch's conduct.

An employer can establish that it exercised reasonable care in preventing and curing harassment by showing that it had an anti-harassment policy in place.  <u>See</u> <u>Mack v. Otis Elevator Co.</u>, 326 F.3d 116, 128 (2d Cir. 2003), <u>abrogated on other grounds by Vance</u>, 133 S. Ct. 2434.  The existence of such a policy is not always dispositive as a matter of law, but in some cases it is.  <u>See, e.g.</u>, <u>Caridad v. Metro-N. Commuter R.R.</u>, 191 F.3d 283, 295–96 (2d Cir. 1999) (affirming district court's grant of summary judgment on certain Title VII claims where existence of anti-harassment policy established the first element of the <u>Faragher</u>/<u>Ellerth</u> affirmative defense), <u>overruled on other grounds by</u> <u>In re Initial Pub. Offerings Sec. Litig.</u>, 471 F.3d 24, 40 (2d Cir. 2006), <u>decision clarified on denial of reh'g sub nom.</u> <u>In re Initial Pub. Offering Sec. Litig.</u>, 483 F.3d 70 (2d Cir. 2007); <u>Fierro v. Saks Fifth Ave.</u>, 13 F. Supp. 2d 481, 493 (S.D.N.Y. 1998) (granting summary judgment based on the <u>Faragher</u>/<u>Ellerth</u> affirmative defense where employer had an anti-harassment policy with available complaint procedures).

While there is no factual dispute over whether WCSU, in fact, maintained an anti-harassment policies, <u>see</u> Pl.'s Local Rule 56(a)2 Statement ¶¶ 34–35 (denying but failing to cite to evidence that disputes the underlying statement of fact regarding WCSU's policies in place), there is a genuine dispute about whether those policies were accessible and well-published.  The plaintiff stated that she looked for such a policy but

13

was unable to find one.  See Puleo Dep. I at 93–94.  Instead, she took her complaints to the union, believing that was the only available avenue for her.  See id. at 94. Therefore, whether WCSU acted reasonably in the way it published its anti-harassment policy and whether the plaintiff reasonably (albeit mistakenly) believed that complaints to her union were her only recourse are subject to genuine factual disputes.

    2.    Severity or Pervasiveness of Conduct

Regarding the first element of a Title VII hostile work environment claim, generally the incidents must be continuous and concerted to be deemed pervasive, but a single act can violate Title VII if it transforms the victim's workplace.  See Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002).  The test has subjective and objective components:  the conduct must be so severe or pervasive that it creates an objectively hostile or abusive environment and the victim must subjectively perceive the environment to be as such.  See id.  To determine whether an act or acts is sufficiently severe or pervasive, courts evaluate the totality of the circumstances and consider the "severity, frequency, and degree of the abuse."  Id.  To establish a sex-based hostile work environment claim under Title VII, a plaintiff must show that the conduct occurred because of his or her sex.  Id.  Courts may consider facially sex-neutral incidents if a reasonable fact-finder could conclude that the incidents were based on sex.  See id. at 378. To draw such an inference, however, requires some basis for inferring that sex-neutral incidents were, in fact, discriminatory.

Puleo summarizes the conduct that she asserts constitutes a hostile work environment in her Memorandum, unfortunately without citation.  See Pl.'s Mem. Opp.

16–20.  The court understands Puleo's summary to refer to the following incidents, as reflected by the submitted evidence and viewed as favorably to Puleo as is reasonable.

The incidents can be split into two categories:  general workplace issues and issues related to the conference.  As for workplace issues, Goetsch invited Puleo to come to a Christmas party at his house, which he said would be a good way for people to get to know her outside of the office.  Puleo Dep. I, at 118.  On one occasion Goetsch called Puleo into his office and told her that he and others were uncomfortable with her clothes because they were too tight or short.  See id. at 135–36, 179–80.  At some point, Goetsch called Puleo into his office, telling her that she seemed to be losing weight.  Id. at 117.  Goetsch denied Puleo's request for travel reimbursements in the spring of 2012.  Id. at 72.  Goetsch told Puleo that WCSU did her a favor by employing her after Puleo said that she did WCSU a favor by traveling.  See id. at 69–70.  At one point, Goetsch sent an e-mail to Puleo and other WCSU staff, informing them not to wear tight jeans or jeans with holes in them.  See id. at 118–19.

Puleo also complains about Goetsch's conduct related to a conference in Philadelphia that they both attended.  Goetsch sent an e-mail to the three female employees who would be attending the conference, including Puleo, telling them, among other things, not to dress unprofessionally.  See id. 130–31; see also Def.'s Dep. Ex. 9.  Goetsch closed the same e-mail by telling the three females to try to have fun on the business trip and suggesting that they go to pubs for March Madness.  See Puleo Dep. I, at 130–31; see also Def.'s Dep. Ex. 9.  During the car ride to the Philadelphia conference, Goetsch talked about "gang showers" and about going out at night.  See Puleo Dep. I, at 166–67.  Goetsch unsuccessfully insisted that all the WCSU employees

be roomed on the same floor of the hotel.  Id. at 151.  Goetsch changed his room to

somewhere near Puleo's.  See id. at 152.  Goetsch told Puleo that she looked nice

when she joined him and the other coworkers in the hotel bar.  Id. at 135.  A female

coworker called Puleo several times and asked her to meet the others who were going

out, and after she met up with them, Goetsch made her and the other females

uncomfortable by drinking too much and being physically inappropriate.  See id. at 154–

55.  Goetsch once again confronted Puleo about not wearing appropriate clothing and

threatened not to send her to any more conferences because of her clothing.  Id. at 35.

A female coworker acknowledged that Goetsch treated Puleo differently.  Id. at 177.

Goetsch texted Puleo and demanded that they meet at the conference, stating that

Puleo was causing an issue between him and the other staff.  See id. at 148–49.

Goetsch waited angrily outside Puleo's coworkers' rooms.  Id. at 168.  At some point

during the conference, Goetsch followed Puleo unnecessarily closely.  See id. at 183–

84.  Goetsch failed to inform Puleo of a staff meeting held in the hotel lobby.  See Puleo

Mem. Opp., Ex. 2 (Doc. No. 54-4) at 42–49.

    Puleo has not established sufficiently severe conduct to succeed on a hostile

work environment or sexual harassment claim.  Indeed, numerous cases have found

significantly worse conduct to be insufficient to make out a hostile work environment

claim.  See Alfano v. Costello, 294 F.3d 365, 379 (2d Cir. 2002) (collecting cases that

ruled the evidence was insufficient as a matter of law to alter the terms of employment,

despite conduct that was more severe and more overtly sexual than the conduct in this

case).  Most, if not all, of these incidents are sex-neutral.  The first category concerns,

essentially, personality conflicts in the work place.  The second category, though

16

perhaps slightly more concerning, contains no evidence that a reasonable jury could find rises to the level of sexual harassment or a hostile work environment. This is especially true given Puleo's concession that Goetsch never touched her, suggested a physical relationship with her, or flirted with her at the conference. See Pl.'s Local Rule 56(a)2 Statement ¶¶ 57–60. There is simply insufficient evidence that Goetsch did or said anything to Puleo that transformed her work environment into an objectively hostile or abusive one. Further, to the extent that Goetsch treated Puleo in an unfriendly way, there is insufficient evidence for a reasonable jury to find that such treatment was because of her sex.

## V.    CONCLUSION

For the foregoing reasons, the court **GRANTS** WCSU's Motion for Summary Judgment (Doc. No. 44). The court **TERMINATES** WCSU's Motion to Strike (Doc. No. 60).

**SO ORDERED**.

Dated at New Haven, Connecticut, this 16th day of June 2015.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge

17